IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. 3:08-mc-00111 (RNC) |
| | ) | |
| DANIEL E. CARPENTER, CHAIRMAN of | ) | |
| BENISTAR, LTD. | ) | |
| | ) | |
| Respondents. | ) | September 12, 2008 |

**MEMORANDUM OF LAW IN OPPOSITION TO
RESPONDENTS' SUPPLEMENTAL BRIEF**

Respondents file a supplemental brief to the Court, re-arguing that issue preclusion is not applicable in the present action, that Respondents have substantially complied with the summons at issue, and that the summons does not meet the factors set forth in *United States v. Powell*, 379 U.S. 48 (1964). The Second Circuit, however, has already held that issue preclusion barred their claims in previous litigation enforcing summonses issued to third party banks and it is applicable here. *Benistar Employer Serv. Trust Co. v. United States*, 184 Fed. Appx. 93, 94 (2d Cir. 2006). Respondents make several unsupported factual assertions because they cannot escape that they have not yet complied with the summons. Moreover, the IRS summons meets the four *Powell* factors. Therefore, the summons should be summarily enforced without need for an evidentiary hearing.

   *A. Issue preclusion is applicable to the present case.*

Respondents argue that issue preclusion should not apply to their claims in the present case because circumstances have changed such that the summons should not be enforced. The

parties fully addressed this issue in its pre-hearing briefing so the United States will summarize

here.  The validity of a summons is tested as of the date the IRS issued the summons, not when

the United States petitions to enforce it.  *PAA Mgmt., Ltd. v. United States*, 962 F.2d 212, 219

(2d Cir. 1992).  Consequently, Respondents must show that the summons was invalid in 2004,

which they cannot do in light of the proceedings in other district courts showing that the IRS was

conducting a legitimate investigation of Respondents' potential liabilities for penalties under 26

U.S.C. § 6700.  Regardless, the IRS is still conducting a legitimate investigation of Respondents.

The IRS has not determined whether penalties would be appropriate and if so, in what amounts.

To do so, the IRS must obtain information from the targets of the investigation.  If the IRS has a

> *B.  Respondents raise several unsupported factual assertions for the first time in their supplemental brief.*

> 1.  Customer names

Respondents now claim that 2,000 pages of documents summoned from JP Morgan

provided "all of the names of Participating Employers, Plan Participants and Insurance Carriers"

of the Benistar 419 Plan even though they resist providing customer names now to the IRS.

(Resp. Mem. at p. 4).  Respondents also contend that they did not allow any new employers to

participate after 2004 "so the Service has all the names of the Participating Employers and Plan

Participants in the Benistar 419 Plan."  Respondents have admitted that they have not provided

all of the customers' names to the IRS, much less the corporate and internal records that the IRS

is seeking.  Moreover, the IRS is entitled to demand production of original documents rather than

rely on copies or names received from third parties. *See United States v. Davey*, 543 F.2d 996,

1001 (2d Cir. 1976) ("Section 7602 does not speak on terms of duplicates, but of the records

themselves and for a good reason"); *accord United States v. Luther*, 481 F.2d 429, 432 (9th Cir.

1973) (access to records from other sources "does not destroy the government's right to inspect

the original and primary records of the Corporation").

Concerning the STEP Plan, Respondents contend that the IRS has all of the information

necessary from previous administrators.  Respondents are again attempting to determine for the

IRS what is or is not relevant for the investigation.  Additionally, Respondents admit that *they*

have not turned over information concerning the STEP Plan, just prior administrators.  In

response, Respondents contend that the STEP Plan did not allow for new participating employers

after 2001.  (Resp. Supp. Mem. at p. 4).  However, the Second Circuit has held that the IRS can

investigate Respondents' connection with the STEP Plan:

> With respect to the STEP Plan, Benistar acquired the plan in 2002.  Although
> Benistar did not sell the STEP Plan originally, there is a genuine factual dispute as
> to whether Benistar ever promoted the Plan, and there is evidence that Benistar
> may have promoted other abusive tax schemes to the STEP plan customers.  The
> IRS is entitled to investigate Benistar's potential liability for any illegality in the
> STEP Plan.  *See PAA Mgmt. Ltd. v. United States*, 962 F.2d 212, 216 (2d Cir.
> 1992) ("In view of the Code's broad delegation of summons authority to the IRS,
> the requirements that a summons have a legitimate purpose and relevance have
> been interpreted liberally in favor of the IRS.").

*Benistar Employer Service Trust Co.*, 184 Fed. Appx. at 95-6.  As with the Benistar 419 Plan, the

IRS is entitled to verify what employers participated in the STEP Plan with original records

summoned from Respondents.

### 2. Payment of penalty

Respondents now contend that they have already paid any penalty to be assessed under 26

U.S.C. § 6700, claiming that the penalty would be only $2,000 because only two plans are under

investigation.  (Resp. Mem. at p. 3).  The IRS has not yet determined whether it should assess a

penalty under 26 U.S.C. § 6700 so Respondents could not know the amount of any penalty to pay, if indeed any penalty will be assessed.  The purpose of the IRS investigation is to determine if a penalty against Respondents under 26 U.S.C. § 6700 is appropriate and if so, how much should be assessed.  Respondents' assertion is putting the cart before the horse.

Further, Respondents misread the statute.  As noted in the Government's reply brief (Doc. # 20), for conduct subject to penalty before October 2004, 26 U.S.C. § 6700(a) imposed a penalty in the amount of $1,000 per transaction or 100% of the gross income "derived (or to be derived)" from the false or misleading promotion.  *See Noske v. United States*, 1993 WL 78311, * 4, n. 6 (D. Minn. 1993), *aff'd on other grounds*, 998 F.2d 1018 (8th Cir. 1993) ("Congress amended section 6700 to make it clear that penalties under this section could be assessed on a 'per transaction' basis"); Kathleen Bicek Bezdichek, Annotation, *Construction and Application of § 6700 of the Internal Revenue Code (26 U.S.C.A. § 6700) Imposing Civil Penalties for Promoting Abusive Tax Shelters*, 2006 A.L.R. Fed. 2d 23 (2006).  The relevant issue then is not how many plans Respondents promoted, but rather, the number of transactions and the income derived from the promotion.  As Respondents have admitted that they have at least 65 customers, the amount of the assessed penalty would likely be higher than $2,000 if the IRS were to assess a penalty. The IRS requires further information from Respondents to determine what, if any, penalty should be imposed.

### 3.  Deposition testimony of Daniel E. Carpenter

Respondents claim that the IRS deposed Carpenter regarding the Benistar 419 Plan and thus, he has testified as required by the summons.  Admittedly, IRS counsel did depose Carpenter concerning cases docketed in Tax Court, but the IRS has not interviewed Carpenter in connection

with the Section 6700 investigation.  At the outset of the deposition, IRS counsel stated that the

deposition only concerned the Tax Court cases, not the Section 6700 investigation, as is proper

for a deposition:

> "I see the purpose of the deposition is about the Benistar 419 Plan <u>with regard to cases
> before the tax court</u>."  (p. 20, ll. 6-9).

> "I will confine our efforts today to exploring questions about the Benistar 419 Plan, <u>and
> the Benistar 419 cases that are docketed in the tax court.  I do not intend to reach into
> other areas which may involve Benistar</u>."  (p. 24, ll. 8-13).

(Government Exhibit 1, Deposition of Daniel Carpenter).  The other areas that "may involve

Benistar" would include a Section 6700 investigation of Respondents.  IRS counsel also noted

that he would "be amenable to rephrasing the questions so they will be consistent so they are in

agreement with the purpose for which we have agreed to do the deposition here today," which

indicates that the parties agreed that the deposition would be confined to the Tax Court cases.

(Gov't Ex. 1, p. 24-25, ll. 17-20, 1-2).  A Section 6700 investigation is necessarily different than

a case before the Tax Court dealing with the application of the plan to a particular taxpayer.  In a

Section 6700 investigation, the IRS is seeking information as to whether Respondents promoted

a plan or arrangement and made (or caused to made) statements as to material tax matters which

the person knew or had reason to know were false or fraudulent in order to determine whether

penalties should be assessed.  26 U.S.C. § 6700.  Thus, Carpenter has not yet provided testimony

for the Section 6700 investigation as asked for in the summons.

### 4.  *DeAngelis v. Commissioner*, T.C. Memo 2007-360 (Dec. 5, 2007)

Respondents also refer to the Tax Court case of *DeAngelis v. Commissioner*, T.C. Memo

2007-360, 2007 WL 4257483 (Dec. 5, 2007) claiming that the case holds that the decision

establishes the bona fides of the STEP Plan.  Respondents obfuscate the holding of *DeAngelis*.

The Tax Court held:

> While the STEP plan may have been cleverly designed to appear to be a welfare benefits fund and marketed as such, the facts of these cases establish that the plan <u>was nothing more than a subterfuge</u> through which the participating doctors, through VRD/RTD, used surplus cash of the PCs to purchase cash-laden whole life insurance policies primarily for the benefit fo the participating doctors personally.

*DeAngelis*, 2007 WL 4257483 at *23.   While the IRS conceded that contributions as to Kerry

Quinn, an office manager, were deductible, the Tax Court disallowed the deductions taken by

several doctors on the premise that the deductions were not an "ordinary and necessary business

expense" under 26 U.S.C. § 162(a).  *Id.*, 2007 WL 4257483 at *1, note 3.  As noted in Revenue

Agent Clark's declaration, the IRS is also investigating Respondents under 26 U.S.C. § 6700

because "it appears that the contributions made to the Benistar Plans may have far exceeded the

actual cost of providing current benefits for the covered employees.  Thus, the contributions may

not be deductible under 26 U.S.C. § 162 even if the Benistar Plans satisfied the requirements of

26 U.S.C. § 419A(f)(6).  If the respondents knew or had reason to know that contributions to the

Benistar Plans were not deductible under 26 U.S.C. § 162 yet still told participants that the

contributions were deductible, then the respondents could be penalized under 26 U.S.C. § 6700

irrespective of whether the program qualifies for the § 419A(f)(6) exemption."  (Clark Decl. ¶ 8).

Respondents also claim that all information acquired by the IRS during the course of the

*DeAngelis* case somehow puts them into compliance with the summons.  Although *DeAngelis*

may not use the words "tax shelters," "listed transactions," or "6700 investigation," the Tax

Court only uses the word "Benistar" once (and not in connection with the Benistar company or

its administration of the STEP Plan) as the program was administered by companies called STEP, Inc. and Teplitzky & Co.[1]  *Id.*, WL 4257483 at *5, *17 (Option C was "To terminate our participation in the STEP Plan and rollover 90% of the potential severance benefit to purchase new insurance policies to provide death benefit protection in the BENISTAR 419 Plan and Trust").  Here though, the IRS is investigating Carpenter and Benistar for promoting a plan or arrangement that did not comport with 26 U.S.C. § 419A(f)(6) or, as in *DeAngelis*, was not deductible as "ordinary and necessary business expenses" under 26 U.S.C. § 162(a). Respondents' argument that the Tax Court's holding in *DeAngelis* somehow absolves the need for Respondents to comply with the IRS summons at issue does not carry weight.

### 5.  Respondents have not complied with the summons at issue.

Respondents contend that they fully complied with a summons issued May 26, 2004, and compliance with the summons at issue here was unnecessary.  Respondents somehow construe Revenue Agent Clark's declaration to state that "the Service has received most of the other information requested."  (Resp. Mem. at p. 6).  Revenue Agent Clark stated no such thing.  In fact, Revenue Agent Clark stated that Respondents' production "was not fully responsive of any of the categories of records sought by the summons."  (Clark Decl. ¶ 17).  The IRS has not received corporate documentation, including internal memoranda and records that would be expected that a corporation would keep in the ordinary course of business.  Respondents are again attempting to define what the scope of the IRS's investigation should be and their efforts should be stopped because the IRS "may investigate merely on suspicion that the law is being

---

[1] Moreover, *DeAngelis* would not have considered any § 6700 implications because the case dealt with how several doctors used some version of the STEP Plan not in the promotion and marketing of the plan as is concerned here.

violated, or even just because it wants assurance that it is not." *Powell*, 379 U.S. at 57 (quoting

*United States v. Morton Salt Co.*, 338 U.S. 632, 642-3 (1950)).

      *C.   The summons at issue meets the factors for enforcement set forth in* Powell*.*

      Respondents again argue that the IRS summons did not comply with the four *Powell*

factors.  As recognized by several district courts and the Second Circuit, the IRS is conducting a

legitimate investigation under 26 U.S.C. § 6700 of Respondents into their promotional activities

of the Benistar Plans.  After receiving some materials from third parties, the IRS now seeks

documents and testimony from Respondents themselves that have not been produced.  The

materials sought are relevant to the investigation in that the IRS is seeking corporate and internal

documents from Respondents.  The IRS does not have many of the documents in its possession

and has complied with the administrative requirements for such a summons.  Therefore, the

Court should summarily order the summons enforced.

      Respondents request an evidentiary hearing.  Because summons enforcement is intended

to be summary in nature, Respondents must make a "substantial preliminary showing" of an

improper purpose to warrant an evidentiary hearing.  *Adamowicz v. United States*, 531 F.3d 151,

160 (2d Cir. 2008).  Respondents have not made any showing, much less a substantial showing.

The Second Circuit held that the IRS has a legitimate purpose for investigating Respondents.  In

furtherance of that investigation, the IRS issued a summons seeking to obtain relevant documents

and testimony, complying with all administrative requirements for summonses.  The IRS has not

yet received the documents or testimony from Respondents.  Because no consequences attach

before a court order, the Court should order enforcement of the summons.  *Schulz v. IRS*, 413

F.3d 297, 298-89 (2d Cir. 2005) (absent court order, "no punitive consequences can befall a

summoned party who refuses, ignores, or otherwise does not comply with an IRS summons").

## CONCLUSION

The requirements set forth in *Powell* have been met by the United States.  Respondents again have not shown that the enforcement of the summons is an abuse of the Court's process. Therefore, the summons should be summarily enforced.

Respectfully submitted,

NORA F. DANNEHY
Acting United States Attorney


s/ James C. Strong
JAMES C. STRONG (phv 02268)
U.S. Department of Justice, Tax Division
P.O. Box 7238, Ben Franklin Station
Washington, DC  20044
Telephone: (202) 514-9953
Facsimile: (202) 514-6770
Email: james.c.strong@usdoj.gov

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that the foregoing was filed with the Clerk of the Court

electronically today, **September 12, 2008,** such that a service copy was sent by way of the

electronic filing system to all counsel who have arranged for electronic service of filings.

s/ James C. Strong
JAMES C. STRONG (phv 02268)
U.S. Department of Justice, Tax Division
P.O. Box 7238, Ben Franklin Station
Washington, DC  20044
Telephone: (202) 514-9953
Facsimile: (202) 514-6770
Email: james.c.strong@usdoj.gov